**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GLAZING CONCEPTS, INC., )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>HANOVER INSURANCE COMPANY, )<br>ET AL., )<br>)<br>Defendants. ) | NO. CIV-05-0070-HE |

## ORDER

After its business was destroyed by a tornado, plaintiff Glazing Concepts, Inc. filed this action against Hanover Insurance Company ("Hanover"), its insurer under a businessowners insurance policy, and Buchanan, Clarke, Schlader, L.L.P. ("BCS"), an accounting firm Hanover had hired to assist in determining the plaintiff's business interruption loss under the policy. The plaintiff asserts breach of contract, bad faith, negligence and conspiracy claims. It challenges the handling of its claim, including the amount of benefits paid for loss of business income and the timeliness of payments. As its expert witnesses, the plaintiff has listed Michael Chris Knapp, an accounting professor and certified public accountant and Harvey M. Lewis, an insurance consultant. The defendants have filed motions [Docs Nos. 72, 73, 74, and 75] seeking to exclude the testimony of both witnesses under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

"In accord with [Fed.R.Evid. 702], the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" Bitler v. A.O.Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting Daubert,

509 U.S. at 589), *cert. denied*, ___ U.S. ___ (2005). Rule 702[1] provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In determining the admissibility of expert testimony, the court initially must decide whether the proposed expert is qualified to offer an opinion on the issues involved in the particular case. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert possesses the necessary knowledge, skill, experience, training or education relevant to the facts at issue. *Id.* The court then must conduct a two-part inquiry to fulfill its Daubert gatekeeping role, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'" Bitler, 400 F.3d at 1232-33 (quoting Daubert, 509 U.S. at 592). In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 1233.[2] Second, the district court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 1234 (quoting

---

[1]*Rule 702 substantially incorporates the principles set out in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), which interpreted an earlier version of Rule 702.*

[2]*Among the factors the Court may consider in making its reliability determination are: (1) whether the opinion can be or has been tested for reliability; (2) whether the opinion has been subjected to publication or peer review; (3) whether there are known or potential rates of error associated with the methodology used; and (4) whether the theory has been accepted in the scientific community. Bitler, 400 F.3d at 1233.*

Daubert, 509 U.S. at 597).

Applying the standards outlined in Daubert and its progeny, the court concludes the proferred testimony, with some restrictions, is admissible under Rule 702.

Michael Chris Knapp

The defendants claim Dr. Knapp is not qualified to testify regarding the plaintiff's income loss as he lacks experience in business interruption cases. They also assert that his opinion is not reliable because he failed to use the methodology set forth in the insurance contract when calculating the plaintiff's loss of income.[3]  Neither argument is persuasive.

Dr. Knapp has not been retained to interpret the insurance contract, but rather to project and calculate the business income the plaintiff lost as a result of the tornado. His knowledge and experience with financial and cost accounting principles and methodologies afford a sufficient basis for making projections of net income or lost net income. Experience with the insurance business or with particular types of policies is not essential.

Dr. Knapp's opinion is not subject to exclusion on the ground the cost-volume-profit ("CVP) analysis he used to determine the plaintiff's loss is inappropriate or not the methodology dictated by the terms of the insurance policy. Even if, as defendants argue, the CVP methodology is usually used to prepare budgets or for planning purposes, it is a generally accepted accounting practice, sufficiently reliable to be the foundation of an estimate of lost business income. It may well be that there are better ways to project lost

---

[3] *The defendants do not otherwise question the qualifications of Dr. Knapp, who has substantial credentials in the accounting field.*

business income or that other methods are more commonly employed for that purpose in an insurance context. However, in the circumstances present here, the Court concludes such arguments go to weight rather than admissibility. *See* <u>Bitler</u>, 400 F.3d at 1233 ("The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.").

Contrary to defendants' assertion, the policy does dictate the use of a particular accounting method to determine the plaintiff's loss of income. The policy defines the term "Business Income,"[4] but does not specify a particular accounting technique to be used in its calculation. Accordingly, Dr. Knapp will be allowed to express his opinion as to the plaintiff's business income loss. He will not, however, be permitted to express the opinions found on pp. 15 - 18 of his expert report pertaining to the conduct and duties of the parties -- the defendants, Hugh Harrell, and BCS -- as those opinions clearly do not satisfy the <u>Daubert</u> standard for expert testimony.

<u>Harvey M. Lewis</u>

While not challenging Mr. Lewis' qualifications or the relevance of his opinions, Hanover seeks to exclude Mr. Lewis' testimony as being unreliable. Hanover asserts Mr. Lewis has failed to specify the bases or reasons for his opinions. Mr. Lewis' report is

---

[4]*Business Income was defined as: "Net income (Net Profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred..."*

certainly not a model for what an expert report should contain.  It fails to make clear what information was reviewed or relied on in reaching his opinions.  It does not clearly identify the principles on which he relied in reaching his conclusions.  However, as Mr. Lewis' experience and training in claims handling practices are substantial and some sense of the bases for his conclusions can be discerned from the report, the court concludes the complete exclusion of his testimony is inappropriate.

Stripped of their partisan rhetoric, Mr. Lewis' conclusions appear to be based on his view that defendant Hanover's conduct deviated from custom and practice in the industry in these ways: (1)  failure to advance funds appropriately (either on client request or without request) when the existence of loss was clear, (2) failure to settle the overall loss in timely fashion, (3) reliance on third party experts in evaluating the claim, and (4) the use of paper checks and U. S. Mail, rather than electronic transfer, in payment of the claims.  The court concludes Mr. Lewis is qualified to offer his opinions as to what the custom and practice of the industry is in these areas.  However, the court also concludes that the expert report of Mr. Lewis indicates an intention to express opinions on matters which go far beyond the appropriate scope of expert testimony in a case such as this.

Mr. Lewis will be permitted to testify as to the considerations involved in evaluating and handling a claim of the sort present here, based on industry custom and practice.  He will not, however, be permitted to testify as to whether or not Hanover's conduct in this case satisfied those industry standards, whether defendant's conduct did or did not breach the duty of good faith and fair dealing, or similar conclusions as to the reasonableness of defendant

Hanover's conduct.[5]  Those are conclusions the jury is capable of drawing for itself.  *See* Thompson v. State Farm Fire and Cas. Co., 34 F.3d 932, 941 (10th Cir. 1994).[6]

Mr. Lewis' testimony also will be limited to claims handling.  BCS challenges Mr. Lewis' credentials insofar as he proposes to testify about its conduct.  *See* Mr. Lewis' Expert Report, p. 4 ¶4(a)-(b).  The court concurs that the plaintiff has not shown either that Mr. Lewis is qualified to testify as to BCS's duties and performance or that his proposed opinion on that subject is reliable under Daubert.

Accordingly, defendants' motions to exclude the testimony of Michael Chris Knapp [Doc. Nos. 72, 75] and the testimony of Harvey Lewis [Doc. Nos. 73, 74] are **GRANTED in part** and **DENIED in part** as specified in this order.  The defendants' applications to file reply briefs in support of their motions pertaining to the testimony of Harvey Lewis [Doc. Nos. 107, 110] are **DENIED**, the court finding the issues are adequately addressed in the briefs previously filed by the parties.

---

[5] *For example, he will not be permitted to testify as to his opinions as to the motive or intent of Hanover or Mr. Hennessey in taking the various actions.*

[6] *The limits noted here are not so much matters of Daubert reliability as they are of the permissible scope of expert testimony.  Testimony as to industry custom, practice and experience in dealing with this type of insurance may be of assistance to the jury.  Application of those standards to the facts of this case is something the jury is capable of doing on its own, hence expert opinion testimony on applying those standards or practices is unnecessary and a "needless presentation" of cumulative evidence.  Thompson, supra; Fed.R.Evid. 403.*

Similarly, the Court concludes the briefs of the parties sufficiently explore the <u>Daubert</u> issues and a hearing is unnecessary.

**IT IS SO ORDERED**.

Dated this 18th day of January, 2006.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE